**COUNTY OF WYOMING, NEW YORK,**
**Plaintiff,**

v.

**ERIE LACKAWANNA RAILWAY**
**COMPANY et al., Defendants.**

Civ. No. 1971–172.

United States District Court,
W. D. New York.

June 18, 1973.

Stakel, Suttell & Found (Wallace J. Stakel, Batavia, N. Y., of counsel), for plaintiff.

Brown, Kelly, Turner, Hassett & Leach, Buffalo, N. Y. (John E. Leach, Buffalo, N. Y., of counsel), for defendant Aetna Casualty & Surety Co.

Smith, Murphy & Schoepperle, Buffalo, N. Y. (Frank G. Godson, Buffalo, N. Y., of counsel), for defendant Hartford Accident and Indemnity Co.

Ohlin, Damon, Morey, Sawyer & Moot, Buffalo, N. Y. (James S. McAskill, Buffalo, N. Y., of counsel), for defendant Insurance Co. of North America.

Heffernan, Sweet & Murphy, Buffalo, N. Y. (Eugene J. Murphy, Buffalo, N.

Y., of counsel), for defendant Casimer N. Tomicki.

Hartman, Schlesinger & Schlosser, Mount Holly, N. J. (Francis J. Hartman, Mount Holly, N. J., of counsel), for defendants James Barnett and James E. Oyer.

CURTIN, District Judge.

In this action the plaintiff County of Wyoming [hereinafter referred to as Wyoming] seeks a declaration of its rights under certain insurance policies issued by defendants Aetna Casualty & Surety Company [hereinafter referred to as Aetna), Hartford Accident and Indemnity Company [hereinafter referred to as Hartford], and Insurance Company of North America [hereinafter referred to as INA]. The policies are the following: (1) Comprehensive Liability Policy Number 15 AL 119506 CM issued by Aetna [hereinafter referred to as the Aetna policy]. (2) Casualty Insurance Policy Number 32 C 699326 issued by Hartford [hereinafter referred to as Hartford policy X]. (3) Casualty Insurance Policy Number 32 C 698992 issued by Hartford [hereinafter referred to as Hartford policy II], and (4) Contractors' Catastrophe Liability Policy Number XBC 1 18 15 issued by INA [hereinafter referred to as the INA policy]. Aetna has moved for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure.

■ The facts giving rise to the dispute between Wyoming and the insurance companies are as follows.[1] On July 14, 1969 at the intersection of the track of the defendant Erie Lackawanna Railway Company [hereinafter referred to as Erie Lackawanna] and County Road 38 in the Town of Genesee Falls, there occurred a collision between an Erie Lackawanna train and a road paving machine owned by the defendant Midland Asphalt Corporation [hereinafter referred to as Midland]. At the time of the accident, County Road 38 was being resurfaced by a Wyoming highway crew under the supervision of Leon Cook, who was employed by Wyoming as a foreman. The road paving machine and its operator, Donnel Werth, had been hired for the operation under an oral contract between Wyoming and Midland and were subject to Cook's instructions and directions.[2] Loaded at the front with gravel from a Wyoming dump truck which it pushed as it moved along, the road paving machine emitted asphalt from the back. As the machine started to cross the track, Werth looked at the crossing signal lights and saw that they were not flashing. Thereafter he did not look at them again or check down the track,[3] for he was watching the back of the machine in order to stop the asphalt near the edge of the track. He knew that Cook had sent men down the track in both directions to watch for approaching trains. While the machine was on the track, one of the sentries signaled Cook that a train was coming, and Cook in turn signaled Werth, who jumped from the machine. The train struck the machine but not the dump truck, which had already cleared the track[4] under its own power on Cook's

---

1. The facts relating to the accident are revealed in depositions filed in Erie Lackawanna Railway Co. v. County of Wyoming, New York, Civil No. 1969-361.

2. For example, Cook determined the depth of the asphalt to be laid and informed Werth, who put the road paving machine in the gear required to maintain the speed necessary to result in the laying of that depth.

3. Because of the noise of the diesel engine of the road paving machine, Werth would not have been able to hear either a cross-

ing bell indicating an approaching train or the whistle of an approaching train.

4. Apparently none of the parties disputes the fact that the Wyoming dump truck had completed its task of unloading gravel into the road paving machine and had moved beyond the track. In light of this fact, the court does not believe it can be said that the collision between the road paving machine and the train arose from the unloading of the truck, triggering coverage under the automobile liability portion of the Aetna policy.

instruction. As a result of the accident, Erie Lackawanna commenced against Wyoming and Midland a suit in which Midland filed two cross-claims against Wyoming and a counterclaim against the railroad. Erie Lackawanna Railway Co. v. County of Wyoming, New York, Civil No. 1969–361. Suits by three members of the crew of the train against the railroad, Wyoming and Midland followed. Tomicki v. Erie Lackawanna Railroad Co., Civil No. 1970–332; Barnett v. Erie Lackawanna Railroad Co., Civil No. 1970–333.

The complaint cites 28 U.S.C. §§ 1332 and 2201 as the bases for the court's jurisdiction in this matter. Before proceeding to the merits, two questions relating to these statutory provisions must be disposed of.

On the face of the complaint, there does not exist the complete diversity of citizenship required for federal jurisdiction under 28 U.S.C. § 1332. *See* Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). The plaintiff Wyoming and defendants Midland, Tomicki, Barnett and Oyer are all residents of New York for purposes of 28 U.S.C. § 1332. Complete diversity may be achieved, however, by dropping the aforementioned defendants from the action.

■ It is settled that, in the exercise of its "inherent powers . . . to perfect federal jurisdiction," a court may drop nondiverse parties and allow an action to proceed in their absence. Kerr v. Compagnie De Ultramar, 250 F.2d 860, 864 (2d Cir. 1958). This may be done, however, only if the court, after

considering the factors set forth in Rule 19(b) of the Federal Rules of Civil Procedure, determines that the nondiverse parties are not "indispensable." *See* Jett v. Phillips & Associates, 439 F.2d 987, 990 (10th Cir. 1971); Kerr v. Compagnie De Ultramar, *supra*, 250 F.2d at 863. The decision whether parties are indispensable is a practical one which "can only be determined in the context of particular litigation." Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 118, 88 S.Ct. 733, 742, 19 L.Ed.2d 936 (1968).

■ In the instant case, there is no reason why a determination of the rights and obligations existing under the various insurance policies cannot be fully made in the absence of the injured members of the crew of the Erie Lackawanna train, Tomicki, Barnett and Oyer.[5] Nor will the interests of the three individuals be prejudiced if they are dropped.[6] At least one other court has held that an injured person is not a required party in an action to determine the coverage of an insurance policy, *see* Allstate Insurance Co. v. Philip Leasing Co., 214 F.Supp. 273, 276 (D.S.D.1963), and, although there is a decision to the contrary, *see* United States Fidelity & Guaranty Co. v. Ditoro, 206 F.Supp. 528, 532–533 (M.D.Pa.1962), "[g]iven the Supreme Court's decision in the Provident Tradesmens case [*supra*], it is unlikely that the injured party would be declared indispensable under Rule 19(b) today." 7 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1619, at 193 (1972).

---

Of course, even a determination that the accident arose out of the unloading of the truck would not alter the fact that it also arose out of the use of the road paving machine. Hence, in light of the instant decision, such a determination would result only in a change in the amounts of coverage to be provided by the various insurance companies and not in a variation of the allocation of responsibility for providing coverage.

5. In response to a letter from the court dated August 11, 1972, counsel for Wyoming

and the insurance companies indicated that they did not believe the three injured crewmen are required for an adequate adjudication of rights under the various insurance policies.

6. In response to the court's letter referred to in footnote 5, *supra*, counsel for Barnett and Oyer indicated that he saw no prejudice to his clients which would result from their being dropped from the suit. Counsel for Tomicki did not respond to the court's letter.

■ Whether Midland is an indispensable party is a slightly more difficult problem. It appears that a judgment rendered in Midland's absence will adequately protect the interests of Wyoming and the insurance companies.[7] The question is whether Midland's interests will be so prejudiced by a judgment rendered in its absence that the action should not proceed without it. Wyoming and Midland may both be insured persons under a given insurance policy with fixed limits of liability. In the event that judgment were rendered against each of them in the actions brought by Erie Lackawanna and the crewmen of the train, it is possible that the insurance fund would be exhausted by claims against Wyoming before Midland had had the opportunity to assert its interest in the fund.[8] *See* Provident Tradesmens Bank & Trust Co. v. Patterson, *supra*, 390 U.S. at 114–115, 88 S.Ct. 733. The possibility of prejudice to Midland is more theoretical than actual, however, for the estimate of damages suffered by the injured persons is far less than the aggregate coverage under the various insurance policies. In any event, Midland's interest in the insurance fund could be protected by a provision in the judgment requiring that no payments be made under a policy until Midland had had an opportunity to present its claims against the fund. *Id.* at 115, 88 S.Ct. 733.

■■ Turning to the second jurisdictional problem, a court may in its discretion decline to entertain an action for a declaratory judgment under 28 U.S.C. § 2201. Sears, Roebuck and Co. v. Zurich Insurance Co., 422 F.2d 587, 588 (7th Cir. 1970); Lebowich v. O'Connor, 309 F.2d 111, 112 (2d Cir. 1962). The question of an insurance company's duty to defend an insured is of course a controversy ripe for declaratory relief. Sears, Roebuck and Co. v. Zurich Insurance Co., *supra*, 422 F.2d at 589. *Cf.* Crowley's Milk Co. v. American Mutual Liability Insurance Co., 426 F.2d 752 (2d Cir. 1970). Some courts have held, however, that a court should decline to entertain an action for declaratory relief where there is a dispute among insurance companies over which of them is to provide a defense and one company has assumed responsibility for rendering a defense. *See, e. g.,* Farmers Elevator Mutual Insurance Co. v. Carl J. Austad & Sons, Inc., 366 F.2d 555, 557 (8th Cir. 1966). On the other hand, a company's reluctant assumption of the task of providing a defense which it claims should be some other company's burden places the insured in "an undesirable position." Universal Underwriters Insurance Co. v. Wagner, 367 F.2d 866, 871 (8th Cir. 1966), and under some circumstances may present a potential conflict of interest between the insured and the insurer. Rexco Industries, Inc. v. Commercial Insurance Co. of Newark, New Jersey, 326 F.Supp. 958, 959 (D.P.R.1971).

■ The court believes that it should exercise its discretion in favor of entertaining the instant action. Implicit in Crowley's Milk Co. v. American Mutual

---

7. The responses of Wyoming and the insurance companies to the court's letter referred to in footnote 5, *supra*, concur in this view.

8. The potential adversity of interest between Wyoming and Midland suggests to the court that the dropping of Midland is to be preferred to its realignment as a plaintiff, suggested by Wyoming and the insurance companies in their responses to the court's letter referred to in footnote 5, *supra*, as a means of producing diversity.

Even if Midland's failure to appear would foreclose it from challenging a judgment obtained by Wyoming, *cf.* Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 114, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), the court would be inclined to exercise its discretion, *see* Jett v. Phillips & Associates, 439 F.2d 987, 991 (10th Cir. 1971), in favor of dropping rather than realigning Midland. Realignment of Midland as a plaintiff would result in an explicit declaration of *its* rights under the various insurance policies without it having been served with notice that such a determination was to be made. In this respect, the court notes that Hartford's answer seeks a declaration of Midland's rights although no cross-claim was served on Midland.

Liability Insurance Co., *supra*, is an approval of a district court's willingness to resolve disputes over coverage under various insurance policies. Furthermore, all of the cases arising out of the accident in question are pending in federal court, and a determination of the instant action should expedite resolution of the other actions.

Turning to the merits of the case, it is first necessary to describe the relevant provisions of the various insurance policies. Definitions of terms and exclusions and other restrictions on applicable provisions will be referred to only to the extent that they are necessary to an understanding of the provisions.

The Aetna policy provides comprehensive automobile liability and comprehensive general liability coverage to insured persons as defined therein. The automobile liability coverage applies to damages "caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading, of any automobile," but excludes "property damage to . . . property rented to" insured persons. The general liability coverage applies simply to damages "caused by an occurrence" with several exclusions, including, first, "property damage to . . . property . . . rented to" insured persons and, second, damages "arising out of the ownership, maintenance, operation, use, loading or unloading of (1) any automobile . . . owned or operated by or rented or loaned to the named insured." For purposes of the policy, the term automobile means "a land motor vehicle, trailer or semi-trailer designed for travel on public roads, (including any machinery or apparatus attached thereto), but does not include mobile equipment." Mobile equipment, in turn, is defined as "a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, . . . designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: . . . graders, scrapers, rollers and other road construction or repair equipment."

Persons insured under the automobile portion of the Aetna policy include (1) the named insured, Wyoming, (2) "any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission" and (3) "any other person or organization but only with respect to his or its liability because of acts or omissions of" the foregoing insured persons. A hired automobile is defined as "an automobile not owned by the named insured which is used under contract in behalf of, or loaned to, the named insured."

A printed provision of the general liability portion of the Aetna policy includes as persons insured not only the named insured, Wyoming, but also

with respect to the operation, for the purpose of locomotion upon a public highway, of mobile equipment registered under any motor vehicle registration law,

(i) any employee of the named insured while operating any such equipment in the course of his employment, and

(ii) any other person while operating with the permission of the named insured any such equipment registered in the name of the named insured and any person or organization legally responsible for such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization. . . .

In addition, a typewritten endorsement adds as a person insured under this portion of the policy "any employee of the NAMED INSURED while acting within the scope of his duties as such."

Hartford policy I, designating Wyoming as the named insured and

Midland as the contractor, provides owners' protective liability insurance. The policy applies to damages "caused by an occurrence and arising out of (1) operations performed for the named insured by the contractor . . . or (2) acts or omissions of the named insured in connection with his general supervision of such operations." None of the parties has argued that Hartford policy I applies to the accident in question, apparently on the ground that it covers only operations in which Midland was acting as a general contractor for Wyoming, whereas at the time and place of the accident their relationship was that of a lessor and a lessee. No declaration of Wyoming's rights under Hartford policy I will therefore be made, and the policy will not be discussed further.

In many respects, Hartford Policy II is similar to the Aetna policy. The provisions outlining coverage under the comprehensive automobile liability and comprehensive general liability portions of the policy are like those in the Aetna policy. The printed definitions of automobile, mobile equipment and hired automobile are identical to those in the Aetna policy. Finally, the provisions relating to insured persons are the same as those in the Aetna policy except that Midland rather than Wyoming is the named insured.

In one significant respect, however, Hartford policy II differs from the Aetna policy. In spite of the printed definitions of automobile and mobile equipment, the road paving machine involved in the accident is listed on the typewritten schedule of owned automobiles falling under the automobile liability coverage.

The INA policy provides contractors' liability insurance with Midland as the named insured. Referring to Hartford policy II as one of the underlying policies,[9] the INA policy provides for coverage of damages caused by an occurrence, and

(1) With respect to any . . . property damage . . . not within the terms of the coverage of underlying insurance but within the terms of coverage of this insurance;[10] or

(2) If the limits of the underlying insurance are exhausted because of personal [or] property damage . . . during the period of this policy. . . .

In addition to certain persons named as insured persons in the printed portion of the policy, a typewritten endorsement adds as a person insured "any person while using, with the permission of the Named Insured, any automobile . . . owned by . . . the Named Insured and any person or organization legally responsible for the use thereof, provided the actual operation or other actual use is within the scope of such permission."[11]

In determining Wyoming's rights under the various insurance policies, the initial question facing the court is whether the Midland road paving machine was an automobile under the Aetna policy and Hartford policy II, or whether it was mobile equipment. It is an axiom of insurance law, as well as general contract law, that, in interpreting an agreement, one looks first and foremost to the intent of the parties as expressed or implied by the language of the agreement. *See* Waiters v. Great

9. Although the INA policy refers to "Aetna Casualty & Security [sic] Co. 32C698992," it is clear from the context that the reference should be to Hartford Accident and Indemnity Co. 32 C 698992, the policy herein referred to as Hartford policy II.

10. This coverage is subject to an insured's retained limit of $10,000.

11. The endorsement was apparently made pursuant to a provision of the policy naming as a person insured, "at the option of the Named Insured and subject to the terms of the coverage of this insurance, any additional Insured(s) included in the underlying insurance listed in Schedule A, but only to the extent that insurance is provided for such additional Insured(s) thereunder."

American Indemnity Co., 12 N.Y.2d 967, 969, 238 N.Y.S.2d 960, 189 N.E.2d 495 (1963). It is clear from the definitions in the Aetna policy that the parties intended vehicles like the road paving machine to be classified as mobile equipment. One does not reach the same conclusion under Hartford policy II, however. By including the road paving machine in the typewritten schedule of automobiles covered by the automobile liability portion of the policy and agreeing upon a separate premium for coverage of the vehicle, the parties indicated their intention to classify the road paving machine as an automobile for purposes of the policy. *See* Britten v. City of Eau Claire, 260 Wis. 382, 387–389, 51 N.W.2d 30 (1952). It is settled law that, where there exist both printed and (type)written clauses that are inconsistent with each other, the (type)written term will prevail over the printed. Poel v. Brunswick-Blake-Collender Co., 216 N.Y. 310, 322, 110 N.E. 619 (1915); Heyn v. New York Life Insurance Co., 192 N.Y. 1, 6, 84 N.E. 725 (1908); Kratzenstein v. Western Assurance Co., 116 N.Y. 54, 57, 22 N.E. 221 (1889); Feldman v. Fiat Estates, Inc., 25 A.D.2d 750, 751, 268 N.Y.S.2d 949 (1966); Laurino v. Hewman, 10 A.D.2d 725, 199 N.Y.S.2d 279 (1960).[12]

The next question is whether Cook, the Wyoming foreman, was using the Midland road paving machine within the meaning of the provision of the automobile liability portion of Hartford policy II extending coverage to a person "using an owned automobile . . . with the permission of the named insured [Midland], provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission." [13]

In determining whether a person is using a vehicle, the courts have focused upon the degree of control which he exercises over its operation. *See* Hake v. Eagle Picher Co., 406 F.2d 893, 895–896 (7th Cir. 1969), either in the narrow sense of signaling the operator whose vision is obscured in order to guide the movement of the vehicle, *see* Liberty Mutual Insurance Co. v. Steenberg Construction Co., 225 F.2d 294, 295–297 (8th Cir. 1955); Woodrich Construction Co. v. Indemnity Insurance Co., 252 Minn. 86, 93–95, 89 N.W.2d 412 (1958); Liberty Mutual Insurance Co. v. American Mutual Liability Insurance Co., 28 N.J.Super. 17, 18–21, 99 A.2d 815 (1953), or in the broad sense of supervising and giving instructions to the operator. *See* Hake v. Eagle Picher Co., *supra*, 406 F.2d at 895–896; Indemnity Insurance Co. of North America v. Pacific Clay Products Co., 13 Cal.App.3d 304, 308–311, 91 Cal.Rptr. 452 (1970). *See also* Tri-State Concrete, Inc. v. Nationwide Mutual Insurance Co., 5 A.D.2d 384, 387, 172 N.Y.S.2d 123 (1958) ("We equate supervision to use . . .").

In the instant case, the facts previously stated establish under either

---

12. The contention that the road paving machine had to be listed as an automobile in Hartford policy II in order to satisfy the requirements of the New York Vehicle and Traffic Law must be rejected. The Law specifically provides for the registration of "road building machine[s]," N.Y. Vehicle & Traffic Law § 401(7) (F')(a) (McKinney's Consol.Laws, c. 71, Supp.1972), and the financial security provisions, *id.* § 310 et seq., apply simply to "motor vehicles" without distinguishing between automobiles and mobile equipment. *See id.* §§ 311(2), 312(1).

The Law's definition of motor vehicle, "[e]very vehicle operated or driven upon a public highway which is propelled by any power other than muscular power" with exceptions not here relevant, *id.* § 125, is broad enough to encompass the road paving machine.

13. There is no doubt that Cook was not operating the road paving machine. Operation of a vehicle by an individual "involves his direction and control of its mechanism as its driver for the purpose of propelling it." Maryland Casualty Co. v. Marshbank, 226 F.2d 637, 639 (3d Cir. 1955). Under the foregoing definition, there is likewise no doubt that Worth was operating the machine.

test a degree of control by Cook of the operation of the road paving machine sufficient to say that he was using the machine. Occupied in ending the laying of the asphalt and unable to watch for an approaching train or a mechanical signal thereof, Werth was dependent upon Cook and the men Cook sent up the track to notify him of any approaching trains. Furthermore, Cook, who was in charge of the resurfacing project for his employer Wyoming, gave instructions and directions to Werth and coordinated the operation of the road paving machine with the other work done in connection with the project.[14]

The case of J. Scheer & Sons Co. v. Travelers Indemnity Co., 35 Misc.2d 262, 229 N.Y.S.2d 248 (1962), does not dictate a conclusion contrary to that reached here. In *Scheer*, the floor of a garage into which a truck had backed to make a delivery collapsed. The court held that the customer's watching the truck back in to make certain that it cleared a sprinkler head protruding from the ceiling of the garage and so informing the driver constituted a "commonplace act of accommodation [which] did not take the control of the truck out of the hands of the chauffeur . . . or make [the customer] a participant in such control." *Id.* at 265, 229 N.Y.S.2d at 251. Like the cases previously cited, *Scheer* indicates that one must look to the degree of control exercised by a nonoperator in determining whether he is a user of a vehicle. Although the facts in *Scheer* were not considered sufficient to establish the degree of control necessary to find the nonoperator to be a user, *Scheer* presented a factual situation very different from that involved in the instant case. In *Scheer* there was one simple communication during a single delivery, while here there was a se-quence of instructions and directions given in accordance with rights of supervision acquired under a contract to hire the road paving machine and its operator for construction work extending over several days.

The foregoing determinations of the status of the Midland road paving machine and the Wyoming foreman Cook have the following consequences for Wyoming's coverage under the various insurance policies.

█ Because the road paving machine was mobile equipment for purposes of the Aetna policy, Wyoming, as the named insured, has the right to primary coverage under the general liability portion of the policy for the claim against it by Erie Lackawanna in Erie Lackawanna Railway Co. v. County of Wyoming, New York, Civil No. 1969–361, for the first cross-claim (for indemnification) against it by Midland in that case and for the claims by the injured crewmen of the Erie Lackawanna train in Tomicki v. Erie Lackawanna Railroad Co., Civil No. 1970–332, and Barnett v. Erie Lackawanna Railroad Co., Civil No. 1970–333. It is not owed coverage by Aetna for Midland's second cross-claim (for property damage to the road paving machine) in the first mentioned case, however, for the general liability portion of the policy does not apply to property damage to property rented to insured persons.

█ Turning to Hartford policy II, coverage must be found under the automobile liability portion of the policy rather than under the general liability portion because, for purposes of the policy, the road paving machine is classified as an automobile owned by the named insured Midland. Cook is a person insured under this portion of the policy because at the time of the colli-

---

14. *Compare* Hake v. Eagle Picher Co., 265 F.Supp. 331, 334–335 (W.D.Wis.1966), in which summary judgment was denied where depositions disclosed a dispute over whether the operator of one company's truck was subject to the instructions and supervision of employees of another company.

sion between the road paving machine and the train he was using the machine with Midland's permission. Wyoming, in turn, is a person insured under this part of the policy because it may be subject to "liability because of acts or omissions" of Cook. *See* N. Y. County Law § 53(1) (McKinney's Consol.Laws c. 11, 1972). Consequently, Wyoming is entitled to primary coverage under the automobile liability portion of Hartford policy II for the claims against it by Erie Lackawanna and the injured crewmen and for Midland's first cross-claim. It is not entitled to coverage under Hartford policy II for Midland's second cross-claim, however, because the automobile liability part of the policy excludes property damage to property rented to insured persons.

■ The INA policy refers to Hartford policy II as an underlying policy and thus, for purposes of its own typewritten endorsement, incorporates the latter's designation of the road paving machine as an automobile. Upon exhaustion of the limits of the automobile liability portion of Hartford policy II, the INA policy therefore provides coverage to Cook and Wyoming, Cook because he was using an automobile owned by the named insured Midland, and Wyoming because it was an "organization legally responsible for the use thereof." *See* N. Y. County Law § 53(1) (McKinney 1972). Wyoming therefore has the right to excess coverage under the INA policy for the claims against it by Erie Lackawanna and the injured crewmen and for Midland's first cross-claim. In addition, because Wyoming is a person insured by virtue of the typewritten endorsement to the INA policy and Midland's second cross-claim relates to "property damage . . . not within the terms of the coverage of the underlying" Hartford policy II, Wyoming is entitled to coverage from INA on the second cross-claim.

Judgment should be submitted on notice to all parties.

So ordered.