**COUNTY OF WYOMING, NEW YORK, Appellee,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant-Appellant,**

and

**Erie Lackawanna Railway Company et al., Defendants-Respondents.**

**No. 674, Docket 74–2252.**

United States Court of Appeals, Second Circuit.

Argued May 20, 1975.

Decided June 16, 1975.

Wallace J. Stakel, Batavia, N. Y. (Stakel, Suttell & Found, Batavia, N. Y.), for appellee.

James S. McAskill, Buffalo, N. Y. (Ohlin, Damon, Morey, Sawyer & Moot, Buffalo, N. Y., James N. Schmit, Buffalo, N. Y., of counsel), for defendant-appellant.

Frank G. Godson, Buffalo, N. Y. (Smith, Murphy & Schoepperle, Buffalo, N. Y., of counsel), for defendant-respondent Hartford Accident and Indemnity Co.

Before MULLIGAN, TIMBERS and GURFEIN, *Circuit Judges.*

MULLIGAN, *Circuit Judge*:

On July 14, 1969 a freight train operated by the Erie Lackawanna Railway Company (Erie Lackawanna) collided with a road paving machine owned by Midland Asphalt Corporation (Midland) and leased to the County of Wyoming (Wyoming). The collision occurred in the Town of Genesee Falls, Wyoming County at the intersection of County Road 38 and the Erie Lackawanna railroad tracks. The paver was being utilized to resurface the county road and was being operated by an employee of Midland who was supervised by a Wyoming foreman. As a result of the impact both the paver and the train were damaged and three members of the train crew also claimed physical injuries. Thereafter, three damage suits were

commenced in the District Court of the Western District of New York.[1]

The present action was commenced by Wyoming in the District Court below seeking a declaratory judgment to construe the various insurance policies involved and to determine the extent to which the County was protected. The defendants were the various insurance carriers and the parties to the underlying actions. After a motion for summary judgment by Aetna Casualty & Surety Company, Hon. John T. Curtin, United States District Judge for the Western District of New York, rendered a decision and order dated June 18, 1973 which construed and defined the policies in issue; the opinion is reported at 360 F.Supp. 1212 (W.D.N.Y.1973). A final judgment was entered pursuant to Fed. R.Civ.P. 54(b) on September 5, 1974. This is an appeal by Insurance Company of North America (INA), one of the defendant carriers, from that judgment. None of the other carriers has appealed and reference to policies other than INA's and the coverage afforded thereunder will be made here only to the extent that may relate to this appeal. We believe that Judge Curtin's detailed opinion and order below correctly determined the issues before us and hence the judgment is affirmed.

## I

The first question to be decided on this appeal is the coverage of Wyoming with respect to the personal injury claims of the trainmen, the property damage claim of the Erie Lackawanna and the first cross-claim by Midland for indemnification. The lower court held that Wyoming had the right of primary coverage against Aetna and against Hartford under the automobile liability portion of the Hartford Accident and Indemnity Company Policy No. 32 C 698992 ("Hartford II") which was issued to Midland but which the court found also covered Wyoming as an additional insured.[2] The coverage of the Aetna liability policy was $50,000 for property damage, and the coverage of the Hartford II liability policy was $50,000 for property damage under its automobile liability provisions and $500,000 for property damage under its general liability provisions. The lower court found that Hartford's liability under the Hartford II policy was under the automobile liability coverage and not under the general liability provisions (i. e. $50,000 coverage was the limit of lia-

---

**1.** Those suits were:

a) *Erie Lackawanna Railway Co.* v. *County of Wyoming, New York and Midland Asphalt Corp.*, Civ.No. 1969–361 (for property damage in the amount of $327,285.24; defendant Midland filed two cross-claims against Wyoming (one for damage to the paver itself) and a counterclaim against Erie Lackawanna);

b) *Casimer Tomicki* v. *Erie Lackawanna Railway Co., County of Wyoming, and Midland Asphalt Corp.*, Civ.No. 1970–332 (for personal injury in the amount of $200,000.00); and

c) *James Barnett and James Oyer* v. *Erie Lackawanna Railway Co., County of Wyoming, and Midland Asphalt Corp.*, Civ.No. 1970–333 (for personal injury in the amount of $400,000.00).

**2.** Judge Curtin's opinion below is referred to. It fully establishes that although Worth, Midland's employee who was loaned to Wyoming, was operating the paver, Cook, a Wyoming foreman, was in charge of the resurfacing job and gave instructions and directions to Worth, and therefore Cook was "using" the machine under the provisions of Hartford II, which extends coverage to any person "using an owned automobile . . . with the permission of the named insured [Midland], provided his . . . use thereof is within the scope of such permission." Wyoming in turn is a person insured under Hartford II because it is subject to "liability because of [Cook's] acts or omissions." See N.Y. County Law, McKinney's Consol. Laws, c. 11, § 53(1)(1972). Thus Wyoming is entitled to primary coverage under the Hartford II policy. 360 F.Supp. at 1220–21.

In addition, the fact that Wyoming is an organization legally responsible for the use of the paver serves also to make it an insured under the INA policy, which includes as an insured "any person while using . . . any automobile . . . owned by . . . the Named Insured and any person or organization *legally responsible for the use thereof* . . . ." (emphasis added). Wyoming's coverage under the INA policy will be discussed at length *infra*.

bility and not $500,000). Therein lies the rub (and this appeal by INA) since the court further determined that Wyoming and its foreman were entitled to *excess* coverage from INA, which had issued a liability policy to Midland with property damage liability coverage of $500,000 as well as bodily injury liability coverage of $500,000.

## II

■ INA first argues that Wyoming is not an insured under the INA policy which names Midland as the insured. The INA policy is a contractors' excess liability policy which indemnifies the insured with respect to personal injury or property damage not within the terms of the underlying insurance or "if limits of liability of the underlying insurance are exhausted because of personal injury [or] property damage . . . during the period of this policy." The INA policy further provides on its face that in addition to the named insured (Midland) coverage is afforded to

PERSONS OR ENTITIES IN-SURED

(2)(b) at the option of the Named Insured and subject to the terms of the coverage of this insurance, any additional Insured(s) included in the underlying insurance listed in Schedule A.
. . .

Schedule A does list the Hartford II policy as an underlying policy. INA argues that this provision only gave Midland the *option* to name Wyoming as an additional insured. The difficulty with this argument is that the INA policy also contains a typewritten endorsement[3] which provides that the "Persons or Entities Insured" provisions of the policy "are amended by the addition of the following:"

(d) any person while using, with the permission of the Named Insured, any automobile or aircraft owned by, loaned to or hired for use by or on behalf of the Named Insured and any person or organization legally responsible for the use thereof, provided the actual operation or other actual use is within the scope of such permission.

. . .

The language of the typewritten amendment is clear—it specifically adds to that section of the policy which identifies the persons or entities insured a new paragraph, (d), which includes those who use automobiles loaned to them by Midland, the named insured (and those legally responsible for the use thereof. See f.n. 2, *supra*.) The only conclusion which we can reasonably draw is that the undated typewritten addendum formed a part of the policy when issued and constitutes an exercise by Midland of the option contained in para. (2)(b), which permits the addition of insureds included in the underlying policies listed in Schedule A. This was the finding below and we agree with the interpretation. In any event, were there any ambiguity involved it is to be construed against INA, which drafted the language, and in favor of the insured. E. g., *Thomas J. Lipton, Inc.* v. *Liberty Mutual Insurance Co.,* 34 N.Y.2d 356, 361, 357 N.Y.S.2d 705, 708, 314 N.E.2d 37 (1974); *Sperling* v. *Great American Indemnity Co.,* 7 N.Y.2d 442, 450, 199 N.Y.S.2d 465, 472, 166 N.E.2d 482 (1960); *Greaves* v. *Public Service Mutual Insurance Co.,* 5 N.Y.2d 120, 125, 181 N.Y.S.2d 489, 492, 155 N.E.2d 390 (1959). Thus we hold that Wyoming was an insured under the INA policy and so is entitled to excess coverage.

This raises of course the further and difficult question: was Wyoming an insured under the automobile liability or

---

3. We note that, in cases of conflict between (type)written and printed provisions, the former prevail. E. g., *Poel* v. *Brunswick-Balke-Collender Co.,* 216 N.Y. 310, 322, 110 N.E. 619, 623 (1915); *Feldman* v. *Fiat Estates, Inc.,* 25 A.D.2d 750, 268 N.Y.S.2d 949, 951 (2d Dep't 1966). Similarly, in case of such a conflict the ambiguity must be resolved in favor of the insured. E. g., *D'Agostino Excavators, Inc.* v. *Globe Indemnity Co.,* 7 A.D.2d 483, 184 N.Y. S.2d 378, 381 (1st Dep't 1959).

the general liability coverage of the Hartford II policy? Although apparently contested below, INA no longer disputes that the County and its foreman are additional insureds under the *automobile* coverage part of the Hartford II policy. In determining that the automobile liability coverage rather than the general liability coverage of the Hartford II policy applied, Judge Curtin relied upon the fact that the road paving machine was on the typewritten schedule of automobiles covered by the automobile liability portion of that policy. The policy did distinguish between automobiles and "mobile equipment."[4] There is no doubt that the paver would be classified as mobile equipment were it not for its specific inclusion on the list of automobiles in the Hartford II policy.[5] We need not labor the point since INA concedes that the automobile liability coverage did apply to the paver but urges that the paver was *also* mobile equipment and therefore its operation was also within the general or comprehensive liability part ($500,000 coverage) of the Hartford II policy.

■ The question is difficult and no party has cited, nor have we found, any authority on point. INA argues that since Midland paid an extra premium of $70 for the coverage of the paver it could not have intended that its liability coverage for an incident involving the paver would be decreased by $450,000. Since Midland is not a party to this appeal and indeed was stricken as a party to the action below,[6] we have no way of determining its intent, and its coverage in any event is not a question properly before us. The one clear indication of intent is that Midland did list the paver as an automobile in the Hartford II policy, and, since the excess INA policy insures the liability arising from the use of a Midland "automobile," the paver is an automobile under both policies. This follows because the INA policy does not define automobile or mobile equipment so we are forced to look at the Hartford II definition, i. e., the definition in the underlying policy. That definition is explicit—in defining automobile it states that the term "does not include mobile equipment." Hence, the paver cannot be both; by the express designation of Midland with the consent of its insurer, Hartford, *this* paver was an automobile and we therefore hold that the court below properly determined that the $50,000 automobile liability coverage and not the $500,000 general liability coverage was applicable.[7]

### III

■ The final question on appeal is whether the court below properly found that Wyoming is entitled to coverage from INA on the second cross-claim by Midland for injury to the paver. Since we have found that Wyoming is an insured under the INA policy, this property damage claim falls within the policy unless there is an exclusion. INA claims

4. "Mobile equipment" was defined in the Hartford II policy to mean "a land vehicle (including any machinery or apparatus attached thereto) . . . designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: . . . graders, scrapers, rollers and other road construction or repair equipment . . .." Further, the definition of "automobile" expressly excluded "mobile equipment."

5. The court below so held in construing the Aetna policy which contained the same definitions but did not list the paver as an automobile. 360 F.Supp. at 1219.

6. So that there would be the complete diversity of citizenship required for federal jurisdiction under 28 U.S.C. § 1332, Midland and the three trainmen, who like plaintiff Wyoming were all New York residents, were dropped from the action by the court below as not-indispensable parties. See *Jett* v. *Phillips & Associates,* 439 F.2d 987 (10th Cir. 1971); *Kerr* v. *Compagnie de Ultramar,* 250 F.2d 860 (2d Cir. 1958); Fed.R.Civ.P. 21.

7. For a lighter view of the judicial construction of everyday terms, specifically, for an explanation of how a pony can be a small bird, see *Regina* v. *Ojibway,* 8 Crim.L.Q. 137 (1965) (opinion of Blue, *J.*).

such exclusion exists in the clause which provides that the policy does not apply "(b) to property damage to (1) property owned by the Insured, or . . . (3) work performed by or on behalf of the Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith; . . ."

Since Midland, the owner of the paver, is an insured under the INA policy, its property damage presumably is not covered under the policy. But Wyoming, though an insured, is not the owner of the damaged property and is potentially liable for its loss. That each insurer is to be treated separately is made clear in the definitions part of the INA policy, which, in defining "Insured", states:

> The insurance afforded applies separately to each Insured against whom claim is made or suit is brought, except with respect to the limits of INA's liability.

In commenting upon such a clause Professor Keeton has stated:

> Suppose that one lends his car to another and that the borrower damages the lender's garage when returning the car. Under [an older] policy form, it was debatable whether coverage was excluded because the damage was to "property owned or transported by the insured," the lender. With the new severability of interest clause, it is clear that the "insured" for the purpose of this claim is the borrower, not the lender, and the exclusion does not apply.

R. Keeton, Insurance Law § 2.11(b)(6), at 83 (1971). See also *State Farm Mutual Automobile Insurance Co.* v. *Jacober,* 10 Cal.3d 193, 200–06, 514 P.2d 953, 957–61, 110 Cal.Rptr. 1, 5–9 (1973); *Globe Indemnity Co.* v. *Universal Underwriters Insurance Co.,* 201 Cal.App.2d 9, 19, 20 Cal.Rptr. 73, 79 (1962).

The other exclusion is clearly inapplicable since there was no damage to the work being performed.

Judgment affirmed.