369 P.2d 407

SOUTHERN CALIFORNIA PETROLEUM CORPORATION, a corporation, Plaintiff-Appellant,

Employers Mutual Liability Insurance Company of Wisconsin, a corporation, Defendant-Appellant,

v.

ROYAL INDEMNITY COMPANY, a corporation; The American Employers Insurance Company, a corporation; Commercial Standard Insurance Company, a corporation; B. J. Service, Inc., a corporation; J. C. Clower, d/b/a Clower Drilling Company; and E. M. Rowland, d/b/a Rowland Tank Truck Service, Defendants-Appellees.

No. 6789.

Supreme Court of New Mexico.

Feb. 27, 1962.

C. S. Neal, Carlsbad, for Southern Cal. Pet. Corp.

Neal & Neal, Hobbs, for Employers Mut. Ins. Co.

Charles F. Malone and Paul A. Cooter, Roswell, for Royal Indemnity Co. and B. J. Service, Inc.

Kermit E. Nash, Hobbs, Gilbert, White & Gilbert, Santa Fe, for Commercial Standard Ins. Co. and Rowland.

NOBLE, Justice.

Declaratory judgment action was commenced to determine whether appellant is afforded public liability protection as an omnibus insured under policies of automobile insurance issued to independent contractors cementing an oil well for appellant. This appeal is from a judgment denying such protection.

The declaratory judgment action is an outgrowth of the principal case arising out of an oil well fire and explosion in which

two persons were killed; two were seriously injured; and, from which extensive property damage resulted. The issues on this appeal, however, are entirely foreign to those presented in Tipton v. Clower, 67 N.M. 388, 356 P.2d 46 and Royal Indemnity Co. v. Southern California Petroleum Corporation, 67 N.M. 137, 353 P.2d 358, arising out of the same fire and explosion.

Southern California Petroleum Corporation (hereafter referred to as "Southern California"), as owner of an oil and gas lease located in Lea County, employed J. C. Clower, d/b/a Clower Drilling Company (hereafter referred to as "Clower") to drill an oil well. Southern California contracted with B. J. Service, Inc. (hereafter referred to as "B. J. Service") to perform the operation of cementing the oil string. B. M. Rowland, d/b/a Rowland Tank Truck Service (hereafter termed "Rowland") was employed by Southern California to furnish water for the cementing operation. Employers Mutual Liability Insurance Company of Wisconsin (hereafter termed "Employers Mutual") was Southern California's liability insurance carrier. Royal Indemnity Company insured B. J. Service vehicles and carried its workmen's compensation coverage. Commercial Standard Insurance Company insured the Rowland truck.

Southern California was instructed by the State Oil and Gas Commission to cement its oil string before penetrating the producing sand but drilled into it before doing so. Before the arrival of B. J. Service and at the direction of Southern California, Clower lowered the five and one-half inch oil string into the hole and pulled the surface casing. Some fifteen hundred feet of oil stood in the hole and a small amount of gas, described as similar to the smoke from a cigarette, was escaping. The field was not known to produce gas in any quantities.

The cementing operation is accomplished by forcing a mixture of cement and water through a cement head fastened to the top of the oil string, into the casing, thence out beneath the lower end up through the drilled hole on the outside of the casing. B. J. Service specialized in this operation and had specially constructed trucks with tanks, pumps, pipes and other equipment by means of which the cement mixture was forced into the casing under pressure. When the cement mixture is forced into the casing, it, in turn, forces any oil, gas, or other substances in the casing out through the lower end and thence up through the space between the walls of the drilled hole and the casing and eventually to the surface. Rowland trucks furnished the water for the operation. It was while the B. J. Service trucks were pumping cement into the casing that a trapped pocket of oil and gas suddenly rose to the surface, exploded and burned with the re-

sulting deaths, personal injuries and property damage.

The trial court found that the efficient and predominating cause of the accident was the antecedent negligence of Southern California and Clower in pulling the surface casing and trapping the oil and gas in the hole; in failing to cement the production string before drilling into the production sand; failure to advise B. J. Service of gas in the hole; failure to supply safety devices; and, in failure to provide safe lighting for the cementing operation at night.

Southern California settled its liability for damages occasioned by the fire and explosion, taking joint tort feasor releases. These settlements were found by the trial court to have been proper and to have been made in good faith. Suits were brought and judgments rendered against Clower.

Southern California contends that it is an omnibus insured under the policies of insurance issued to B. J. Service and Rowland insuring their vehicles, and that the insurance carriers of the latter should be required to contribute to reimburse Southern California and Employers Mutual for the damages paid by them.

The decisive question, then, is whether Southern California is an insured within the meaning of the insurance contracts covering the B. J. Service and Rowland trucks. The limits of the coverage and persons protected is to be determined by a proper interpretation of the intent of the contracting parties as disclosed by a construction of the whole policy of insurance. The insuring provision reads:

"*I.   Coverage A—Bodily Injury Liability*

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, * * * including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the * * * use of any automobile."

A similar clause covers property damage and the use of an automobile is extended to include "(c) * * * the loading and unloading thereof."

The word "insured" is defined by the policy to include:

"*III.   Definition of Insured*

"The unqualified word 'insured' includes the named insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, * * *."

The latter provision is termed the omnibus clause of the policy and it is seriously

insisted that Southern California is an omnibus insured either as a person (1) using the B. J. Service and Rowland vehicles, or (2) legally responsible for the use thereof. A construction of the omnibus clause is of first impression in this jurisdiction.

Appellants assert first that Southern California was using the insured vehicles through its employment of B. J. Service, an independent contractor. They contend that the injuries and damages were clearly caused by accident and occurred during the unloading of the vehicles and that under the terms of the policy Southern California is entitled to the protection of the insurance.

It is self evident that the insuring clause limits the obligation to pay only such sums as the *insured* shall become legally obligated to pay. The omnibus clause extends the coverage to one other than the named insured only if such other person is using the vehicle or is legally responsible for its use, and then only when the actual use thereof is by the named insured or with his permission. It is not denied that the actual use of the vehicles, at all times, was by B. J. Service, the named insured. In what manner was Southern California using the trucks? Appellants maintain that its employment of B. J. Service is sufficient to constitute it as the user under the insurance contract. We cannot agree.

It has been held that one employing an independent contractor may be using the vehicle of such independent contractor when such employer exercises supervisory control, at some time, over the vehicles or the movement thereof. The decisions recognize use as going beyond actual mechanical operation of the vehicle and "as encompassing the broader concept of employing or putting the vehicle to one's service by an act which assumes at any time— with the consent of the owner or his agent —the supervisory control or guidance of its movements." Woodrich Construction Co. v. Indemnity Ins. Co. of North America, 252 Minn. 86, 89 N.W.2d 412. See, also, Persellin v. State Automobile Ins. Ass'n, 75 N.D. 716, 722, 32 N.W.2d 644, 647; Hardware Mut. Cas. Co. v. Mitnick, 180 Md. 604, 26 A.2d 393; Liberty Mut. Ins. Co. v. Steenberg Const. Co., 8 Cir., 225 F. 2d 294. But, absent the exercise of any supervisory control over the vehicle of an independent contractor, the one employing such independent contractor is not a person "using" such vehicle within the meaning of the omnibus clause, when the actual use thereof is by the named insured or its employees.

The trial court found that B. J. Service was an independent contractor; that neither Southern California nor Clower exercised nor had the right to exercise any control over the use of its vehicles; and, that Southern California was interested only in

the result of the cementing operation but not in the methods or details of the work. That finding is not attacked. The control of the movement or operation of the vehicles by Southern California required to make the vehicles "used by" it are lacking.

The decisions relied upon by appellants are distinguishable upon the ground that each of them turned upon the fact that the employer of the independent contractor either assumed direct supervisory control, at some time, or actually loaded or unloaded the vehicle.

Neither Southern California nor Clower assumed any control or supervision over the Rowland truck. The court found that Rowland's only duty was to park its water truck at a convenient location for unloading the water therefrom by the B. J. Service trucks.

Appellants urge, in the alternative, that even if Southern California was not the user of the insured vehicle it was a person or organization legally responsible for the use thereof, and, as such, an omnibus insured entitled to the protection of the insurance. They argue that since the accident arose out of the use of the vehicles, even though not by Southern California, and since Southern California was legally responsible for the *accident*, it must follow that Southern California is an omnibus insured. No authorities have been cited, nor have we found any, in this or any jurisdiction so construing this language of an omnibus clause. The language of the policy is:

"The unqualified word 'insured' includes the named insured and also includes * * * any person or organization legally responsible for the use thereof, * * *."

The general rule is that the contractee is not liable for the negligence of an independent contractor. Pendergrass v. Lovelace, 57 N.M. 661, 262 P.2d 231. An exception, however, is that one cannot escape the responsibility for damage resulting from work that is inherently dangerous by delegating it to an independent contractor. Pendergrass v. Lovelace, supra. The exception is not material here since the trial court found that the drilling of this well was not an ultra-hazardous or extra-hazardous undertaking.

We have pointed out that Southern California assumed no control over the movements or operation of the vehicles. In fact, the court found that the efficient and predominating cause of the accident here was the negligence of Southern California antecedent to commencement of the cementing operation by B. J. Service. If we were to adopt appellants' construction, we would be required to substitute "accident" for the words "use thereof." We find nothing in the language of this clause which is susceptible of a construction which would in-

clude, as an insured, a person who is merely legally responsible for the accident by reason of his antecedent negligence not connected with the use of the insured vehicle. Under the facts here, Southern California would have no liability if the proximate cause of the accident had been the use of the vehicles by the independent contractor. Pendergrass v. Lovelace, supra.

■ Appellants insist that the trial court erred in expressly finding (Findings Nos. 8 and 35) that there was no causal connection between the pumping of cement into the well and the fire and explosion which occurred or between the use and operation of the Rowland truck and the accident. They contend that it was the cement, forced into the casing, that in turn forced the oil and gas in the well to the surface. It is argued that there was necessarily a causal connection between the cementing operation and the accident. It is urged that requested findings numbered 10, 11, 15, 16 and 17 and requested conclusions 1 and 2 squarely presented the issue of a causal connection between the pumping operation and the accident. This causal connection, they assert, brings Southern California within the policy provisions as one using or legally responsible for the use of the insured vehicles. We cannot agree. A mere causal connection between the use of the vehicle and the accident is not enough to establish liability of the independent contractor's insurance carrier to appellants. An annotation at 160 A.L.R. 1259, at 1272, has this to say regarding causal relation between an accident and the process of loading and unloading:

> "According to all the cases discussing this question the general rule seems to be that an accident is covered by the 'loading and unloading' clause only if the loading or unloading was the efficient and predominating cause of the accident."

See, also, Gamble-Skogmo, Inc. v. St. Paul Mercury Indemnity Co., 242 Minn. 91, 64 N.W.2d 380.

Southern California would be a person legally responsible for the use of the insured vehicles only if it would become legally responsible for the negligent acts of the named insured. No such liability exists under the facts of this case. It does not become an insured merely because the accident occurred during the unloading, absent control over the vehicles or legal responsibility for their use. A causal connection between the unloading and the accident would become important only if Southern California was either using or legally responsible for the use of the vehicles. We must conclude that under the facts here present, the trial court did not err in concluding that Southern California was neither "using" the insured vehicles nor legally responsible for their use within the meaning of the insurance policies.

Since appellants' complaint regarding the denial of requested findings and conclusions is directed solely to the question of a causal connection between the unloading of the B. J. Service equipment and the accident, we will not consider whether such denial or the finding of no such causal connection was erroneous. Had the causal connection contended for been found, the result would not have been changed.

■■ A judgment will not be reversed for errors by the trial court unless such errors are shown to be prejudicial or produced an erroneous result. The primary function of an appellate court is to correct an erroneous result, not to correct errors which could not change the result. Armijo v. Shambaugh, 64 N.M. 459, 330 P.2d 546. See, also, State ex rel. Sanchez v. Stapleton, 48 N.M. 463, 152 P.2d 877; Heron v. Garcia, 48 N.M. 507, 153 P.2d 514. It was said in Ortiz v. Gonzales, 64 N.M. 445, 329 P.2d 1027:

"It is, however, well settled that if the trial court's judgment can be sustained upon correct legal principles it will not be reversed merely because the reasoning or conclusion of law is erroneous."

Other collateral questions are argued but are dependent upon the issue of whether Southern California was an insured. Having determined that it was not an omnibus insured, those questions are either resolved by what we have said, found to be without merit, or unnecessary to be determined. The judgment will be affirmed.

IT IS SO ORDERED.

CHAVEZ and MOISE, JJ., concur.

COMPTON, C. J., and CARMODY, J., not participating.