406 F.2d 893
 Gary HAKE, Plaintiff,
v.
EAGLE PICHER COMPANY, Defendant, Third-Party Plaintiff and
Appellee, v. HARDWARE MUTUAL CASUALTY COMPANY, Third-Party
Defendant, Third-Party Plaintiff and Appellant, v. GENERAL
ACCIDENT FIRE AND LIFE ASSURANCE CORPORATION, Ltd.,
Third-Party Defendant and Appellee.
 No. 16432.
 United States Court of Appeals Seventh Circuit.
 Jan. 29, 1969.
 
 Edmund W. Powell, Milwaukee, Wis., Dale L. Schlafter, John F. White, Chicago, Ill., for appellant, Wickham, Borgelt, Skogstad & Powell, Milwaukee, Wis., and McKenna, Storer, Rowe, White & Haskell, Chicago, Ill., of counsel.
 Eugene O. Gehl, Griffin G. Dorschel, Madison, Wis., for appellee.
 Before HASTINGS, KILEY and FAIRCHILD, Circuit Judges.
 FAIRCHILD, Circuit Judge.
 
 
 1
 Gary Hake brought an action for personal injury against Eagle Picher Company.[1] Hake recovered $192,845.75 and that determination is not challenged here. Two insurance companies were brought in, and the issues on appeal relate to their coverage of Eagle Picher's liability to Hake.
 
 
 2
 In October, 1961, Eagle Picher was engaged in widening an earthen dam on its mining property. Hake, an employee of Gensler Brothers, drove a Gensler truck in the course of the widening project. He was injured when the truck he was backing along the dam went over the edge. Hardware Mutual Casualty Company had issued an automobile liability policy to Gensler covering the truck. General Accident Fire and Life Assurance Corporation, Ltd. insured Eagle Picher against liability generally, and its policy contained an excess insurance clause.
 
 
 3
 The district court gave judgment that Hardware covered Eagle Picher's liability up to policy limits of $100,000 and was not entitled to pro ration of coverage with General Accident. Hardware has appealed.
 
 
 4
 Before trial, Eagle Picher moved for summary judgment determining that Hardware's policy covered liability, if any, of Eagle Picher to Hake. Judge Doyle denied the motion, and wrote an opinion which very clearly set forth the background and the issues relevant to coverage by Hardware.[2] Although the opinion dealt with the pleadings and the showings made on the motion, including depositions, it happens that the description in the opinion of factual claims is a substantially accurate statement of those which were supported by evidence at the trial. We shall avoid unnecessary duplication.
 
 
 5
 It suffices to say that the critical questions are whether Eagle Picher's liability to Hake arose out of the 'use' of the dump truck and whether Eagle Picher was 'using' it, in each case within the meaning of the Hardware policy.
 
 
 6
 The jury returned a special verdict. Eagle Picher's liability to Hake was determined by answers that Eagle Picher was negligent with respect to its duties under the safe place statute;[3] that such negligence was a cause of the accident; that Hake was negligent with respect to his own safety; that such negligence was a cause; that 67% Of the combined causal negligence was attributable to Eagle Picher and 33% To Hake; and that Hake's total damages were $287,829.48. Judge Doyle found as a matter of law that in certain senses detailed in his earlier opinion, and in respects other than what he referred to as job site control, Eagle Picher was a 'user' of the dump truck. He submitted to the jury the question whether, with respect to the construction of the dam, Eagle Picher was exercising control over the truck being operated by Hake. The jury answered 'Yes'.
 
 
 7
 Hardware now argues four propositions: (1) Eagle Picher's liability did not arise out of the use of the truck; (2) Eagle Picher was not using the truck; (3) the instruction defining the nature and degree of control required was erroneous; and (4) in any event the loss should have been prorated between Hardware and General Accident.
 
 
 8
 (1) Did Eagle Picher's liability arise out of the use of the truck?
 
 
 9
 The pertinent provision of the Hardware policy, read literally, requires that the bodily injury because of which an insured has become liable must be an injury arising out of the use of the automobile. We agree with Judge Doyle that the use of the dump truck out of which Hake's injury arose 'is in the mainstream of normal and expected uses.' It would seem that this sufficiently demonstrates that this provision was fulfilled. Both insurance companies have argued here, however, as if the policy required that the liability must be a liability arising out of the use of the automobile.
 
 
 10
 The negligence of Eagle Picher, claimed by Hake and found by the jury, consisted of failure to fulfil the duties required by sec. 101.06, Wis.Stat. The dam was a 'place of employment', and Eagle Picher was the 'employer' with respect to it, as well as 'owner'. Hake was a 'frequenter.' The statutory duties owed to Hake were to furnish a safe place, to furnish and use safety devices and safeguards, to adopt and use methods and processes reasonably adequate to render the place safe and do every other thing reasonably necessary to protect his safety. The applicable standard of safety, found in sec. 101.01(11), was such freedom from danger as the nature of the employment or place of employment will reasonably permit.
 
 
 11
 The gist of Hardware's argument seems to be that since Eagle Picher's found negligence was negligence with respect to the condition of its premises, and not what Hardware describes in its brief as 'automobile negligence', Eagle Picher's liability did not arise out of the use of the truck.
 
 
 12
 It is clear from the evidence, however, that Eagle Picher intended trucks to be used as this one was and that the place was deemed unsafe because the condition of the dam (particularly the freshly widened part) and the absence of guide markers or signals made the place dangerous for the use of trucks. Under the circumstances the dangerous condition and the normal and intended use of the truck interacted to generate Eagle Picher's liability. The two are inseverable, and it would seem ridiculous to say that the liability did not arise out of the use of the truck.
 
 
 13
 (2) Was Eagle Picher using the truck at the time of the accident?
 
 
 14
 This is the more difficult question. The truck was on Eagle Picher premises, performing work for the benefit of Eagle Picher, in a manner designated by Eagle Picher. It was owned by Gensler and driven by a Gensler employee. In such circumstances the owner or person in custody of premises has been deemed to be using the automobile, within the meaning of an automobile liability policy, where by signalling directions to the driver the owner of the premises or his employee has exercised immediate control over the movement of the automobile.[4] Where the owner of the premises has exercises little more control over the automobile than to invite it onto his premises for a designated objective, the owner has been held not to be using the automobile.[5]
 
 
 15
 As indicated by Judge Doyle, this case falls somewhere between the situations just described. We think it is much closer to the first. It is clear that Eagle Picher chose the method of widening the dam. Apparently the method required that the loaded trucks be backed out onto the dam, and the narrowness of the dam itself closely restricted the choice the drivers had with respect to their route. There was testimony that Gensler told his employees to take instructions from Eagle Picher employees, and that Eagle Picher employee Graham gave them instructions about backing along the dam and dumping the dirt. Graham operated a front end loader. He used it to fill the truck at an area away from the dam, and at intervals moved it out onto the dam to spread the dirt transported by the truck. He necessarily coordinated the movements of the truck with the operations of his machine.
 
 
 16
 It is difficult and probably impossible to formulate an exact measure of the degree of control which a person not owning or driving the particular automobile must exercise over it in order to have the type of responsibility for its potential to do injury so as to be deemed entitled to the protection of automobile liability coverage. Obviously the expression 'while using' is intended to describe the appropriate relationship, but does not readily supply an answer in situations of the type now before us.
 
 
 17
 The term is to be construed in the light of the purposes of omnibus coverage clauses in automobile liability policies and may, of course, be construed against the insurer.
 
 
 18
 Hardware urges us to decide as a matter of law that Eagle Picher did not have the requisite degree of responsibility for the operation of the truck to be deemed to be 'using' it while it was backed along the dam. We think, however, that the situation approaches one where it could be said as a matter of law that Eagle Picher was 'using' it.
 
 
 19
 Such conflict as there was in the relevant evidence arose between testimony of Eagle Picher's manager that 'we have deliberately avoided giving any instructions to employees that are not ours,' and testimony, on the other hand, that Gensler told his drivers to follow Graham's instructions and that they did so. To the extent that any jury issue existed, it was adequately resolved by the verdict.
 
 
 20
 (3) The instruction on control.
 
 
 21
 Question 7 in the special verdict was: 'At the time and place in question, with respect to the construction of the dam, was Defendant Eagle Picher Company exercising control over the truck being operated by Gary Hake?'
 
 
 22
 With reference to that question, the court instructed:
 
 
 23
 'To control means to exercise restraining or directing influence over, to regulate, or to supervise.
 
 
 24
 'Control is not the same as operation. A vehicle may be under the control or right of control of a person, even though it is being operated by another. If you find that at the time and place in question Eagle Picher Company was exercising restraining or directing influence over, regulating, or supervising the truck, then the truck was under the control of Eagle Picher Company, and you should answer Question No. 7 'yes.'
 
 
 25
 'But if you find that at the time and place in question Eagle Picher Company was not exercising restraining or directing influence over, regulating, or supervising the truck, then the truck was not under the control or right of control of Eagle Picher Company, and you should answer Question No. 7 'no."
 
 
 26
 Hardware's specific objections are that the instruction indicated that an unexercised right of control would be sufficient and that it failed to say that 'actual immediate control over the movement or operation of the vehicle' was required.
 
 
 27
 The special verdict question inquired whether control was being exercised. Although the instruction did refer to the concept of right of control, it required a finding that control was being exercised in order to answer the question 'Yes'.
 
 
 28
 We have already indicated the narrow area of any jury question on this issue. It may be debatable whether the words suggested by Hardware would improve the instruction, but in the light of the limited jury issue, their omission could not have been prejudicial. There was no dispute but that the physical situation and the manner of doing the work, both of which were the responsibility of Eagle Picher, very closely controlled the operation of the truck out of which the injury arose.
 
 
 29
 (4) Should Hardware and General Accident pay the loss pro rata?
 
 
 30
 The 'other insurance' clause in the Hardware policy called for pro rata apportionment of the loss. The General Accident policy provided generally for pro rata apportionment, but also included the following:
 
 
 31
 '* * * the insurance afforded by this policy shall be excess insurance over any other valid and collectible insurance (1) with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile, and (2) disclosed to the company as in effect on the effective date of this policy and upon the basis of which the premium for the insurance under this policy is modified, but in such event the insurance under this policy shall apply only in the amount by which the applicable limit of liability stated in the declarations exceeds the applicable limit of liability of such other insurance.'
 
 
 32
 The excess insurance provision just quoted clearly describes the insurance afforded to Eagle Picher by Hardware: 'insurance (1) with respect to loss arising out of * * * the use of any non-owned automobile. * * *'
 
 
 33
 Hardware points to the conjunctive between (1) and (2), and argues that the provision applies only to other insurance as to which both (1) and (2) are true. Hardware's reading is grammatically correct, but it is immediately apparent that the conditions stated in (2) are so wholly unlikely to be true of any insurance described in (1) that the conjunctive reading would render the provision meaningless. It must be interpreted as disjunctive.
 
 
 34
 Thus Hardware has a pro rate provision with respect to insurance against this liability and General Accident provides that its insurance is excess over Hardware's. Where this type of conflict exists the excess clause controls and is to be given full effect.[6]
 
 
 35
 The judgment appealed from is affirmed.
 
 
 
 [1]
 Jurisdiction is founded on diversity. All agree that Wisconsin law controls
 
 
 [2]
 Hake v. Eagle Picher Company (W.D.Wis.1966), 265 F.Supp. 331
 
 
 [3]
 Sec. 101.06, Wis.Stat
 
 
 [4]
 Woodrich Construction Co. v. Indemnity Ins. Co. of North America (1958), 252 Minn. 86, 89 N.W.2d 412; Liberty Mutual Insurance Company v. Steenberg Construction Co. (8th Cir. 1955), 225 F.2d 294, both discussed by Judge Doyle at 265 F.Supp. 331, 336
 
 
 [5]
 See Great American Insurance Co. v. General Acc. Fire s& Life Assur. Corp. (5th Cir. 1963), 321 F.2d 948; Ford Motor Co. v. Continental Cas. Co. (1966), 6 Ohio St.2d 114, 216 N.E.2d 44
 
 
 [6]
 Lubow v. Morrissey (1961), 13 Wis.2d 114, 123, 108 N.W.2d 156