**CONTINENTAL INSURANCE CO.,**
Appellant,

v.

**UNITED STATES FIDELITY AND
GUARANTY CO., Appellee.**

No. 2052.

Supreme Court of Alaska.

Nov. 29, 1974.

Kenneth P. Jacobus, Anchorage, for appellant.

Clyde C. Houston, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR and BOOCHEVER, JJ.

BOOCHEVER, Justice.

The ill-fated attempt of Northern Corporation to haul rock across frozen Cooper Lake at the behest of Chugach Electric Association [1] gives rise to this litigation. This is a contest between Northern's insurer and that of the trucking subcontractor who actually hauled the rock to determine which shall bear the cost of the wrongful death claims of the families of two drivers whose trucks broke through the ice and sank to the bottom of the lake. The central issues are whether Northern Corporation qualifies as an insured party under the policy of automobile insurance issued to the trucking subcontractor by United States Fidelity and Guaranty Company (hereinafter U.S.F. & G.); and, if not, whether the wrongful death complaints and the facts available at the time Northern and its insurer, Continental, tendered defense to U.S.F. & G. established a duty to defend Northern against the suits, regardless of the ultimate determination of non-liability on U.S.F. & G's part for the actual wrongful-death recoveries.

Northern Corporation contracted to strengthen the Cooper Lake dam belonging to Chugach Electric. When two rock quarries near the dam were exhausted, the only remaining accessible source of rock for the project became a quarry at the opposite end of the lake from the dam. The most economically feasible method of moving the rock was to haul it across the frozen lake in winter. To that end, Northern entered into an agreement with Robert Cooper whereby Cooper was to be paid for hauling the rock with his trucks and drivers.

Northern officials considered the ice unsafe for the heavy traffic of rock-laden trucks in 1967, despite some expert advice to the contrary. In 1968, Northern tested the ice by drilling and determined to proceed with the haul without further expert advice. Under the direction of Northern's vice-president, Meredith E. Bowdish, Jr., Northern employees scraped snow off the frozen lake with a caterpillar blade, forming a roadway 50 to 60 feet wide. After the roadway was tested by Bowdish and Cooper, the hauling of half-loads (five cubic yards, a total truck and load weight of about 35,000 pounds) of rock began February 1, 1968. On the fourteenth load, Cooper's truck broke through the ice and sank. The driver of the fifteenth load saw and avoided a "rough spot"—the area of Cooper's demise—but the next driver drove into the hole made by the Cooper truck and was also lost.

The estates of the two drivers brought wrongful death actions against Northern, Chugach and other defendants not here material. Northern tendered defense of the action to U.S.F. & G., theorizing that Northern was an omnibus insured under the policy of insurance issued by U.S.F. & G. on the Cooper trucks. U.S.F. & G. refused the tender of defense.

Northern was insured by Continental under both a general liability and an automobile liability policy. Continental defended Northern in the wrongful death actions. Ultimately, the two actions were settled for an aggregate of slightly more than $300,000,

1. *See* Northern Corp. v. Chugach Electric Assoc., 518 P.2d 76 (Alaska 1974), opn. on rhg., 523 P.2d 1243 (Alaska 1974).

of which Northern bore $250,000. Continental paid the entirety of Northern's share of the settlement.

During the pendency of the wrongful death actions, Continental brought this action for declaratory judgment in the superior court, seeking to impose the costs of defense and actual recovery in the wrongful death actions upon U.S.F. & G. The case was tried without a jury, and the superior court entered a judgment supported by a written opinion denying any recovery to Continental. This appeal followed.

## I. WAS NORTHERN INSURED BY U.S.F. & G.?

U.S.F. & G. insured the Cooper trucks under a standard automobile liability policy covering death arising out of the use of the vehicles, and containing the following definition of "insured":

> With respect to the insurance for bodily injury liability . . . the unqualified word "Insured" includes the Named Insured and . . . also includes *any person while using the automobile and any person or organization legally responsible for the use thereof*, provided the actual use of the automobile is by the Named Insured or such spouse or with the permission of either [emphasis added].

The language insuring persons other than the named insured is often referred to as an "omnibus clause", and those insured by such language are referred to as "omnibus insureds".

To obtain shelter of another's insurance policy as an omnibus insured, one must be a "user" of the insured vehicle or legally responsible for its use, and the injury or death must "arise out of" the use of the vehicle.

In deciding who is a user of a vehicle for the purposes of omnibus coverage, courts universally require that if one who claims to be a user was not actually driving the subject vehicle, he must have exercised some form of control over it.[2] The parties agree with this rule, but cite cases reaching opposite conclusions on somewhat similar facts. Resolution of the issue of user status necessarily turns upon a case-by-case analysis of the facts, and we must therefore review in more detail the circumstances surrounding the deaths of Cooper and the other driver.

Cooper agreed to perform the ice haul on an operated-hour-per-truck basis. That is, Cooper was required to supply sufficient equipment and drivers to complete the task, and payment was to be based upon an hourly scale. The contract took that form, rather than the more common quantity or job rate, because Cooper feared inadequate compensation might result from the risky and tentative nature of the work. Northern also paid the room and board of the drivers but made no deductions for taxes, union dues or the like. The drivers' wages were paid by Cooper.

Northern bladed the roadway over the ice approximately three weeks before the haul was to commence in order to permit deeper freezing. The construction of the road was based upon expert advice solicited by Northern. Several days before the haul, Cooper and Bowdish tested the ice by driving a fully-loaded truck across the road. The actual path of the road was straight across the lake, but drivers could, and did, deviate from the road through a very shallow snow cover. Immediately before commencing the haul, Northern's blade operator cut a return road from the dam to the quarry.

---

2. Hake v. Eagle Picher Co., 406 F.2d 893, 896 (7th Cir. 1969); Liberty Mutual Ins. Co. v. Steenberg Constr. Co., 225 F.2d 294, 297 (8th Cir. 1955); County of Wyoming, New York v. Erie Lackawanna Ry. Co., 360 F.Supp. 1212, 1219 (W.D.N.Y.1973); Indemnity Ins. Co. of North America v. Pacific Clay Products Co., 13 Cal.App.3d 304, 91 Cal.Rptr. 452, 456–457 (1970); Nicollet Properties Inc. v. St. Paul Mercury Ins. Co., 271 Minn. 65, 135 N.W.2d 127, 132–133 (1965); Woodrich Constr. Co. v. Indemnity Ins. Co., 252 Minn. 86, 89 N.W.2d 412, 418 (1958); Southern California Petroleum Corp. v. Royal Indemnity Co., 70 N.M. 24, 369 P.2d 407, 409–410 (N.M.1962).

Three days before the haul commenced, one wheel of a front-end loader broke through the ice along the road. On the night before the haul, Cooper and two of his drivers drove a pickup truck along the road to check its safety, particularly in the area where the loader broke through. The following morning, Cooper and Bowdish discussed whether to commence the haul or wait; Bowdish left the discussion to check the area of the previous break-through and, upon his return, gave an order to begin work. Bowdish crossed the lake in a pickup truck behind the first loaded truck and, after he arrived at the dam, radioed an order for the other trucks to begin. Subsequent drivers set their own speed and proximity to other trucks; the only activity of Northern in any manner affecting speed or pacing of the trucks was through the speed of its loading operation.

All trucks carried half-loads. There was considerable dispute regarding whether the decision to take light loads was made by Cooper or Bowdish. The trial court found:

> [T]he weight of the testimony indicates Cooper told his men to take light or half-loads, and . . . the men had the power to determine that a given load was sufficient.

Continental has not accepted this finding in arguing its position on appeal, although no argument is directed specifically at the finding. The superior court's finding is supported by adequate evidence, and, accordingly, is controlling on this appeal.[3]

Bowdish told drivers where to dump the rock at the dam. He also checked the condition of the ice at approximately the spot where the accident occurred after a driver informed him that water was rising through a crack in the ice.

This review demonstrates that, aside from the construction and maintenance of the road, the entire concerns of the Northern officer and employees at the job site were the loading and unloading of the vehicles. Except in the unloading area, remote from the accident, no Northern employee directed Cooper's trucks or drivers regarding speed, route, spacing or even weight of load. We do not, therefore, find Hake v. Eagle Picher Co.,[4] the case upon which Continental places principal reliance, persuasive. There the narrowness of a road across a dam required the general contractor's employees to direct every movement of the truck involved in the accident [5] at the time and place where it occurred. Nor are we persuaded by the host of cases finding general contractors to be omnibus insureds where job-site injuries resulted from misdirection by a general contractor's employee of a vehicle operated by the employee of a subcontractor or supplier.[6] The considerations applicable to ascertaining whether one who employs an independent contractor may be regarded as a "user" of vehicles are well stated in the case of Southern California Petroleum Corp. v. Royal Indemnity Co.:[7]

> It has been held that one employing an independent contractor may be using the vehicle of such independent contractor when such employer exercises supervisory control, at some time, over the vehicles or the movement thereof. The decisions recognize use as going beyond actual mechanical operation of the vehicle and "as encompassing the broader concept of employing or putting the vehicle to one's service by an act which assumes at any time—with the consent of the owner or his agent—the supervisory

3. *See* Alaska R.Civ.P. 52(a). *See also* Nelson v. Green Constr. Co., 515 P.2d 1225, 1228 (Alaska 1973).

4. 406 F.2d 893 (7th Cir. 1969).

5. *Id.* at 894–896.

6. Liberty Mutual Ins. Co. v. Steenberg Constr. Co., 225 F.2d at 295; County of Wyoming, New York v. Erie Lackawanna Ry. Co., 360

F.Supp. at 1219–1220; Indemnity Ins. Co. of North America v. Pacific Clay Products Co., 13 Cal.App.3d 304, 91 Cal.Rptr. at 455–457; Woodrich Constr. Co. v. Indemnity Ins. Co., 89 N.W.2d at 418; Liberty Mutual Ins. Co. v. American Mutual Liability Ins. Co., 28 N.J.Super. 17, 99 A.2d at 815–817.

7. 70 N.M. 24, 369 P.2d 407, 410 (1962).

control or guidance of its movements." Woodrich Construction Co. v. Indemnity Ins. Co. of North America, 252 Minn. 86, 89 N.W.2d 412. See, also, Persellin v. State Automobile Ins. Ass'n, 75 N.D. 716, 722, 32 N.W.2d 644, 647; Hardware Mut. Cas. Co. v. Mitnick, 180 Md. 604, 26 A.2d 393; Liberty Mut. Ins. Co. v. Steenberg Const. Co., 8 Cir., 225 F.2d 294. But, absent the exercise of any supervisory control over the vehicle of an independent contractor, the one employing such independent contractor is not a person "using" such vehicle within the meaning of the omnibus clause, when the actual use thereof is by the named insured or its employees.

■ All the cases in which there has been a finding of "use" manifest a more intimate control over the subject vehicle than the mere building and occasional checking of a road, the extent of Northern's involvement with the Cooper trucks. In this case Northern did no more than prepare the ice road and contract for Cooper, his trucks and drivers to travel it. Were we to find Northern an omnibus insured, we would, in effect, establish a rule that general contractors may look to the vehicle insurance policies of others for all liabilities resulting from job-site vehicular accidents. We cannot believe such an interpretation is intended by those who draft or buy policies of automobile insurance. We therefore affirm the trial court's holding that Northern merely prepared a condition antecedent to the use of the vehicles,[8] and was not a user of the Cooper trucks.[9]

## II. DID U.S.F. & G. HAVE A DUTY TO DEFEND NORTHERN?

■ The proper time to determine whether an insurer is liable upon its policy of insurance is after all the relevant facts have been ascertained; however, where an insurance contract creates a duty in the insurer to defend against lawsuits which could fall within the coverage, the scope of *that* duty is established by the pleadings in the action and by the facts which are known or reasonably ascertainable at the time defense is tendered to the insurer.[10] Since the U.S.F. & G. policy created a duty to defend,[11] we must decide whether that duty was breached at the time it ignored Northern's tender of defense, despite our con-

**8.** *See* Southern California Petroleum Corp. v. Royal Indemnity Co., 369 P.2d at 409–410.

**9.** Judge Carlson, in his well-reasoned memorandum of decision, held not only that Northern was not a user of the trucks but also that even if it were such a user, the deaths did not arise out of any such use by Northern of the trucks. In view of our affirmance on the grounds that Northern was not a user of the vehicles, we do not reach this second issue.

We further decline to consider an issue raised by Continental regarding the interpretation of certain language in the U.S.F. & G. policy. The omnibus clause includes as an insured "any person or organization legally responsible for the use" of the vehicles. Continental cursorily contends that Northern was legally responsible for the use of the Cooper vehicles, first because "it has been legally required to pay damages because of this accident", and second, because the work might be deemed inherently dangerous. The original wrongful death action against Northern contained several theories of recovery, the most prominent of which was direct negligence in failure properly to design, construct and maintain the

ice road. The case was settled. A determination of "legal responsibility" therefore required a fresh determination of fact by the trial judge in the instant action. The classification of an activity as "inherently dangerous" also requires a thorough development of facts in the trial court. Neither of Continental's arguments has been developed with facts nor adequately supported by authority, here or below, and we do not consider them for those reasons. Fairview Development, Inc. v. City of Fairbanks, 475 P.2d 35, 36 (Alaska 1970), cert. denied 402 U.S. 901, 91 S.Ct. 1374, 28 L.Ed.2d 642; Williams v. DeLay, 395 P.2d 839, 847 (Alaska 1964).

**10.** National Indemnity Co. v. Flesher, 469 P.2d 360, 366 (Alaska 1970).

**11.** The U.S.F. & G. policy provides that the company shall:
defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent, but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

clusion that U.S.F. & G. was not an insurer of Northern after all the facts were ascertained.

We have previously held that the insurer must defend a suit where the complaint alleges facts that may be within the policy coverage [12] or where such facts are known or reasonably ascertainable by the insurer.[13] The wrongful death complaint alleged that Northern hired C & C Trucking Company, owned and operated by Robert C. Cooper, for the *use* of its trucks and drivers to haul rock across the lake. This allegation placed U.S.F. & G. on notice of contention that Northern was a user of the vehicles.

■ The highly detailed complaint in the wrongful death actions alleged at least one cause of action based upon specific negligence of Bowdish in failing to heed danger signs, ordering the haul to continue and misrepresenting that the dangerous portion of the ice road was safe.[14] Defense of the wrongful death actions was tendered on October 24, 1968, three months after Bowdish's deposition had been taken by the plaintiffs in the wrongful death action; certainly the material in that deposition was reasonably ascertainable to U.S.F. & G. The deposition indicated that Bowdish had

far more control over the operation of the Cooper trucks than the trial court in this case found he had. It was Bowdish's testimony and deposition that the trial court rejected in finding that Cooper gave the order to haul half-loads. We further note that when Northern tendered defense to U.S.F. & G., the law of this state regarding the scope of omnibus clauses was uncertain; the *Marwell*[15] case was not decided until 1970. Given the vagaries in both law and fact, the wrongful death actions were at least potentially within the coverage of the U.S.F. & G. policy as of October 1968. U.S.F. & G. should have undertaken Northern's defense, and the failure to do so was a breach of the duty to defend created by the insurance contract.

■ In *Marwell* we established the measure of damages to be applied where an insurer wrongfully fails to defend an insured:

> We employ the principle of equitable subrogation and rule that the defense costs must be shared pro rata between concurrent insurers in proportion to the amounts of coverage they have provided.[16]

The general liability[17] policy issued by Continental to Northern had an aggregate

---

12. Theodore v. Zurich General Accident & Liability Ins. Co., 364 P.2d 51, 55 (Alaska 1961).

13. National Indemnity Co. v. Flesher, 469 P.2d at 366.

14. The amended complaint in the wrongful death action alleged among other things that Northern inspected, drilled holes in the ice and measured its thickness; Northern laid out and constructed an ice road across the lake for use by the trucks which would haul rock; that Northern, through Bowdish, advised the truck drivers that the ice had been properly tested, and that the ice road was safe to commence hauling rock across it; that C & C Trucking Company, owned and operated by the deceased, Robert C. Cooper, was hired for the use of its trucks and drivers to haul rock across the lake; that Bowdish took it upon himself as a layman to determine whether or not the ice was safe, and as a result, negligently misrepresented to the drivers that the haul road was safe and that they could commence operations accordingly.

15. Marwell Const., Inc. v. Underwriters at Lloyd's, London, 465 P.2d 298 (Alaska 1970).

16. Marwell Const., Inc. v. Underwriters at Lloyd's, London, 465 P.2d at 313. Mere breach of the duty to defend does not create full liability upon the policy. Hogan v. Midland National Ins. Co., 3 Cal.3d 553, 91 Cal.Rptr. 153, 160, 476 P.2d 825, 832 (1970). The insurer who wrongfully fails to defend will, however, be precluded from relitigating any issues necessarily determined in the primary action, and will be required to indemnify at least to policy limits any liability imposed upon the insured in that action based upon theories within the coverage of the relevant policy. Hogan v. Midland National Ins. Co., 91 Cal.Rptr. at 160, 476 P.2d at 832.

17. For the same reasons that we held U.S.F. & G. not to be an insurer of Northern under its policy of automobile insurance issued to Cooper, we reject Continental's argument that its automobile policy issued to Northern, rather than the general liability policy, ought to be considered in determining the amounts of coverage for proration purposes.

limit of $500,000, without smaller limits per person or occurrence. The U.S.F. & G. policy issued to Cooper contained limits of $100,000 per person and $300,000 per occurrence for bodily injury liability. The amount of coverage U.S.F. & G. would have provided had it been ultimately found liable was $200,000. U.S.F. & G. should therefore bear two-sevenths of Continental's costs of defending the wrongful death actions on Northern's behalf. We remand for the calculation of that sum.

Affirmed in part, reversed in part, and remanded.

RABINOWITZ, C. J., dissenting.

ERWIN and FITZGERALD, JJ., not participating.

RABINOWITZ, Chief Justice (dissenting).

I cannot agree with the majority's conclusion that Northern Corporation was not an omnibus insured under the policy issued by United States Fidelity and Guaranty Co. to Robert Cooper. Whether or not Northern was a "user" of the vehicles must be determined by ascertaining whether Northern exercised some form of supervisory control over the trucks during the period in question. In my view, the superior court erred when it concluded that the record did not warrant a holding that Northern exercised supervisory control over the rock-hauling operation which was attempted with Cooper's trucks.

Under my analysis of the evidence, the record demonstrates that Northern exercised a sufficient degree of control to bring it within the omnibus coverage of Cooper's policy. In reaching this conclusion, I rely on essentially the same facts to which the majority has alluded. Briefly, these facts are: Approximately three weeks before the accidents, Northern bladed a roadway from 50 to 60 feet in width across the ice in part to permit greater freezing. Several days prior to the accidents, Cooper and Bow-

dish, vice-president of Northern, tested the ice by loading a truck with progressively heavier loads and backing it onto the ice. On the morning in question, Bowdish and Cooper discussed whether the ice was safe for hauling. Shortly after this conversation took place, Bowdish gave an order to Cooper to commence the haul.

Bowdish then personally followed Cooper's initial haul truck across the ice, communicating by radio with one of his employees who was detaining Cooper's other trucks while awaiting word from Bowdish. After the first of Cooper's trucks successfully traversed the ice to the dam site, Bowdish radioed his employee that Cooper's other trucks could commence hauling.[1] At various times Bowdish patrolled the roadway, as well as directing the drivers as to where they should dump the rock.

During the course of the haul, one of the drivers informed Bowdish that on crossing the ice he had noticed water coming through a crack in the ice.[2] This same driver later observed Bowdish checking the area where water was coming through cracked ice. Subsequently, Bowdish told this driver that the area was "all right".

From these facts I would hold that Northern directly supervised the hauling operation. More particularly, I am compelled, on the record in this case, to the conclusion that Northern exercised a sufficient degree of control to come within the reach of the omnibus insured clause. For it was Northern which ordered the trucks to proceed and also determined before and during the haul operation whether or not the ice was safe for truck traffic. Unlike the majority, I find these facts require a holding that Northern was a user of the vehicles under the criteria of Southern California Petroleum Corp. v. Royal Indemnity Co., 70 N.M. 24, 369 P.2d 407, 410 (1962). There the court articulated the appropriate test in the following manner:

The decisions recognize use as going beyond actual mechanical operation of

---

1. The record shows that each driver determined his own speed and proximity to the proceeding trucks.

2. The crack was located approximately where the two trucks later broke through the ice.

the vehicle and "as encompassing the broader concept of employing or putting the vehicle to one's service by an act which assumes at any time—with the consent of the owner or his agent—the supervisory control or guidance of its movements." (quoting from Woodrich Construction Co. v. Indemnity Ins. Co. of North America, 252 Minn. 86, 89 N.W.2d 412, 418 (1958))

Further, I think it inaccurate to imply that a holding to the effect that Northern is an omnibus insured would permit general contractors to look to the vehicle insurance policies of others for all job-site vehicular accidents. In the instant case, Northern made direct supervisory decisions in regard to precisely the area where the accidents occurred.

Since I would hold that Northern is covered by Cooper's policy, I would also hold that the accidents come within Northern's automobile liability coverage rather than the general liability coverage of the policies which Continental Insurance issued to Northern.