783 P.2d 465

**Elmer and Phil SANCHEZ,
Plaintiffs–Appellants,**

v.

**Lorenzo HERRERA, et al.,
Defendants–Appellees.**

No. 17999.

Supreme Court of New Mexico.

Nov. 30, 1989.

James A. Burke, Santa Fe, for plaintiffs-appellants.

Sommer, Udall & Hardwick, P.A., Eric Sommer, Kimball Udall, Santa Fe, for defendants-appellees.

OPINION

BACA, Justice.

The Sanchez family appeals from a declaratory judgment in favor of State Farm Mutual Insurance Company on two issues: first, whether a gunshot accident within the insured's truck falls within the liability coverage on the truck; and second, whether the insured can stack the limits of medical payments coverage from five separate policies. The parties are in agreement on facts sufficient to decide the legal question of the insurer's duty to the insured for this type of accident. There is also no dispute that in order for the Sanchezes to stack medical payments from five policies, there must, as a matter of law, exist some ambiguity in those policies. We hold the Sanchez' policy offers coverage for this type of accident, but that the policies unambiguously precluded the stacking of medical payments. Accordingly, we reverse in part and affirm in part, and remand to the trial court for further proceedings.

FACTS

Plaintiff Elmer Shanchez, his friend Mario Herrera, and a third companion were returning from a three-day hunting trip in a pickup truck owned by Elmer's father, Phillip Sanchez. They were carrying their guns loaded in the cab. Seeing what they took to be a Game and Fish Department roadblock, the young men braked the pickup, and with the engine still running, attempted to empty their guns and avoid a possible fine. While emptying his gun inside the truck, Herrera accidently fired and a bullet passed through Elmer Sanchez' foot.

Phillip Sanchez carried liability insurance on the truck that provided coverage for damages "caused by accident resulting from the ownership, maintenance or use of

your car." Sanchez also carried medical coverage up to a limit of $5,000.00 on the truck, and he carried identical coverage with varying limits on four other family vehicles under separate policies. All of this insurance was with one company, State Farm. After the accident, claims were made against the truck's liability coverage, the medical payments coverage, and against the four other policies' medical payments provisions.

State Farm paid $5,000.00, the limit under the truck's medical coverage. State Farm refused to pay any money under liability because, State Farm argued, the accident did not result from use of the truck. State Farm also refused to pay medical benefits based on the other four policies. It argued that those policies restricted coverage to owned vehicles listed on each policy, and did not cover Sanchez vehicles generally.

COVERAGE

■ The parties agree that coverage extends only over those activities that are connected with use of the vehicle. They also agree that use of a pickup for hunting is foreseeable, and that transportation of guns would be incident to use of the vehicle for hunting. The parties disagree, however, both on whether emptying guns within the pickup's cab could be considered incident to the vehicle's use for hunting, and on what degree of connection is required between the use of the vehicle and the injury. State Farm maintains the proper test in New Mexico is whether the use of the vehicle is the "efficient and predominating cause" of the accident, citing *Pecos Valley Cotton Oil, Inc. v. Fireman's Fund Ins. Co.*, 780 F.2d 892, 894 (10th Cir.1986). Sanchez argues the connection should be considered in terms of the duty owed by the insurer, and not in terms of proximate causation.

*Efficient and predominating cause does not apply.*

*Pecos Valley*, cited by State Farm, involved a truck driver who was injured as he was unloading cottonseed into a bin. An iron door used to cover the bin was in an open position, but due to an improper weld, the door fell and injured the truck driver. The question before the Tenth Circuit was whether the truck's liability policy, which contained a loading and unloading limitation clause, would cover the accident, or whether coverage should be under the seed bin's insurance. The federal court held that for automobile liability insurance coverage to extend in New Mexico, the use of the vehicle must be the "efficient and predominating cause" of the accident, citing *Southern California Petroleum Corp. v. Royal Indem. Co.*, 70 N.M. 24, 369 P.2d 407 (1962). *Pecos Valley*, 780 F.2d at 894. The federal court noted that this court's discussion of the test in *Southern California Petroleum Corp.*, while providing some guidance, was dictum. *Id.* at 894 n. 3.

In *Southern California Petroleum Corp.*, a drilling company's negligence created a hazardous condition that led to an explosion when other subcontractors were pouring a mixture of concrete and water into a well casing. The trial court held that the antecedent negligence was the "efficient and predominating cause" of the accident. 70 N.M. at 27, 369 P.2d at 410. The managing oil company, held responsible for the negligence in the trial court, then sought a declaratory judgment that it was insured under the vehicle liability coverage of its subcontractors who poured the concrete and water. The appellate court noted argument that the pumping operation was part of the chain of causation, but cited to an annotation of "loading and unloading" cases that set forth the "efficient and predominating" causation test. 70 N.M. at 30, 369 P.2d at 413. This court held, however, that it need not reach the issue of causation in that case.

Whether or not the "efficient and predominating" test for causation in loading and unloading cases has been adopted in New Mexico, a question we find not well settled, the test should not be applied to these facts. In both *Pecos Valley* and *Southern California Petroleum Corp.*, the issue before the court clearly dealt with a commercial context in which one compa-

ny's business operation overlapped another's. Insurance had specifically foreseen this problem, and the vehicle insurance contained a specific clause to define the company's limits in the "loading and unloading" context. In the case before us, there is no issue of overlapping liability in a commercial setting. This is also not a "loading and unloading" case, as those terms are generally understood in the insurance context.[1]

*There must be a reasonable causal connection between use of the vehicle and the injury.*

Other jurisdictions have addressed the question of causation for fact patterns similar to the one before us. Generally, courts have firmly rejected any notion of proximate causation and have required instead only that there be some causation between the injury and the use of the vehicle. *Quarles v. State Farm Mut. Auto. Ins. Co.*, 533 So.2d 809 (Fla.Dist.Ct.App.1988) (finding a significant causal connection without stating a general standard); *Union Mut. Fire Ins. Co. v. Commercial Union Ins. Co.*, 521 A.2d 308 (Me.1987) (reasonable causal connection between use of vehicle and injury); *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 350 S.E.2d 66 (1986) (test is not proximate cause, but causal connection); *Kohl v. Union Ins. Co.*, 731 P.2d 134 (Colo.1986) (en banc) (injury must be causally related to a conceivable use of the vehicle). We agree with these courts that the proper inquiry in hunting accidents involving automobiles is whether the use made of the vehicle at the time of the accident logically flows from and is consistent with the foreseeable uses of that vehicle.

*Reasonable causation applied.*

In reviewing hunting accidents, courts have identified at least five fact patterns, which are listed here in descending order of judicial preference for extending coverage: 1) accidents in which the actual movement of the vehicle caused the firing of the gun, as in transport; 2) accidents in which the discharged gun was being removed from or placed in a gun rack in the vehicle; 3) accidents in which the gun was being loaded into or unloaded from the vehicle; 4) accidents arising from use of the vehicle as a gun rest; and 5) accidents in which the vehicle is described as a "mere situs" for the accident, such as when children play with guns in a standing vehicle. *See Quarles*, 533 So.2d 809, 811–12. Clearly, this case does not involve either gun play or use of the vehicle as a gun rest. It is more analogous either to the accidental discharge of a gun while a vehicle is in motion, or to the loading and unloading of guns into or from a vehicle. Under recognized categories, we conclude this accident was reasonably connected with use of a vehicle.

If we analyze these facts without reference to other jurisdictions, we still conclude that emptying a gun within the cab of a pickup truck is foreseeably incident to use of that vehicle for hunting. Inclement weather is a frequent condition of hunting trips, and a vehicle is a logical shelter. It is foreseeable that, however unwise it may be, some hunters will load and unload their guns within their trucks. Therefore, by applying the test that we adopt today of reasonable causation between the use of the vehicle and the injury, we hold there is coverage.

---

1. The parties referenced "loading and unloading" cases track fact patterns of hunters getting in and out of trucks. The better rule appears to be that all activities are analyzed in terms of being incident to hunting and thereby covered under vehicular liability. However, at least one court has considered "loading and unloading" for hunting to be a separate "use" and then analyzed whether the particular activity in question bore a close enough causal connection to "loading and unloading." *See Toler v. Country Mut. Ins. Co.*, 123 Ill.App.3d 386, 78 Ill.Dec. 790, 462 N.E.2d 909 (1984) ("loading and unloading" clause held at issue with inquiry whether there was a causal connection between injury and "loading or unloading"). This seems an unnecessary step, particularly when there is no "loading and unloading" clause in the pertinent insurance contract. In addition, there would be superfluous confusion in this case because emptying a gun is synonymous with "unloading".

*STACKING OF MEDICAL PAYMENTS PROVISIONS*

■ Sanchez also appeals the district court's summary judgment in favor of State Farm on the issue of stacking. Stacking involves adding the maximum coverage under one policy to the maximum of a second policy until the insured's damages are fully compensated or his or her combined policy limits are exhausted. *See Lopez v. Foundation Reserve Ins. Co.*, 98 N.M. 166, 168, 646 P.2d 1230, 1232 (1982). Sanchez argues that he should be able to add the coverage provided by each of five policies carried with State Farm on separate family vehicles for total medical coverage of $21,000.00. State Farm paid out $5,000.00 on the truck in which the accident occurred, but argues that each of the other policies clearly restrict coverage to only that vehicle, owned by the insured, that is listed on *that particular policy.* The district court held the policies were unambiguous, and, because the policies precluded stacking, the court granted summary judgment for State Farm. We affirm.

The question of whether medical payments provisions in insurance policies should be stacked has not previously been considered in New Mexico. In a series of opinions, however, this court has addressed the issue of stacking uninsured motorist benefits under automobile policies. *Lopez,* 98 N.M. 166, 646 P.2d 1230 (stacking of uninsured motorist coverage not precluded by the policy terms and should be allowed); *Schmick v. State Farm Mut. Ins. Co.,* 103 N.M. 216, 704 P.2d 1092 (1985) (New Mexico's statute mandating uninsured motorist coverage was intended to cover accidents with underinsured motorists as well); *Jimenez v. Foundation Reserve Ins. Co.,* 107 N.M. 322, 757 P.2d 792 (1988) (stacking should be allowed pursuant to New Mexico's statute even when the insurance contract clearly precludes stacking).

State Farm argues these cases are distinguishable from the present issue because the legislature mandated uninsured motorist coverage in NMSA 1978, Section 66–5–301(B), whereas medical coverage exists only by virtue of contracts freely entered into between the insured and State Farm. We agree, and find that our prior decisions concerning stacking are not directly analogous to the present case, because of the strong public policy in New Mexico regarding uninsured motorist coverage. We thus resort to traditional methods of contract interpretation to assist our resolution of this issue.

This court has established two principles for analyzing stacking questions, and both are applicable in the absence of a statute. First, an insurance company may have a duty specifically to exclude stacking if the policy as a whole encourages the insured to expect coverage. *Lopez,* 98 N.M. at 168, 646 P.2d at 1232. Second, such exclusionary provisions will be enforced only if they are both unambiguous *and* not in conflict with statutory public policy. *Jimenez,* 107 N.M. at 324, 757 P.2d at 794. Therefore, in this case a failure by State Farm to exclude the stacking of medical payments could make the contract ambiguous as a matter of law, requiring reversal.

The relevant portions of the insurance policy at issue state:

We will pay for medical expenses for *bodily injury* sustained by:

1.  a. the first *person* named in the declarations;

   b. his or her *spouse;* and

   c. their *relatives.*

These *persons* have to sustain the *bodily injury:*

   a. while they operate or occupy a vehicle covered under the *liability* section.... [Emphasis in original.]

Further, the liability section of each policy purchased by Sanchez provides:

We will:

1. pay damages which an *insured* becomes legally liable to pay because of:

   a. *bodily injury* to others, and

   b. damage to or destruction of property, including loss of its use, caused by accident resulting from the ownership, maintenance or use of *your car....* [Emphasis in original.]

"Your car," as defined by the policy, is the vehicle described on the "Declarations

Page" of each policy. The declarations page of each policy owned by Sanchez lists only one vehicle—the sole vehicle insured by that policy.

Additionally, each policy contains an exclusionary clause, as follows:

THERE IS NO COVERAGE:

4. FOR MEDICAL EXPENSES FOR BODILY INJURY:

a. SUSTAINED WHILE OCCUPYING OR THROUGH BEING STRUCK BY A VEHICLE OWNED BY YOU, YOUR SPOUSE, OR ANY RELATIVE, WHICH IS NOT INSURED UNDER *THIS COVERAGE;* .... [Emphasis added.]

We examine this language for ambiguity and to determine whether it specifically rejects stacking.

*Standard for ambiguity in the context of insurance contracts.*

When this court reviews a contract for ambiguity, it examines the entire document in an attempt to ascertain the intent of the parties, and it will not find ambiguity unless the contract is "reasonably and fairly susceptible of different constructions." *Levenson v. Mobley,* 106 N.M. 399, 401, 744 P.2d 174, 176 (1987). If the contract is unambiguous, the court is bound to enforce its terms. *CC Housing Corp. v. Ryder Truck Rental, Inc.,* 106 N.M. 577, 746 P.2d 1109 (1987).

When a court examines the words of an insurance contract for ambiguity, a particular concern arises due to the nature of the contract. Modern contract theory emphasizes the importance of the bargain as an element of a typical contract. *See e.g. Restatement (Second) of Contracts* § 17 (1981). This model of a bargained-for enterprise carried out by, if not equally shrewd, at least free-willed parties, does not fit insurance contracts. The typical insured does not bargain for individual terms within policy clauses; the insured makes only broad choices regarding general concepts of coverage, risk, and cost. Not only does the insurance company draft the documents, but it does so with far more

knowledge than the typical insured of the consequences of particular words.

New Mexico law recognizes the special nature of insurance contracts and has developed principles of construction that favor both the insured and the avowed purpose of insurance, the provision of coverage. *See e.g. King v. Travelers Ins. Co.,* 84 N.M. 550, 505 P.2d 1226 (1973) (if one party prepares an instrument, ambiguities construed against drafter); *Anaya v. Foundation Reserve Ins. Co.,* 76 N.M. 334, 414 P.2d 848 (1966) (ambiguities construed in favor of the insured). *See also* 7 S. Williston, *A Treatise on the Law of Contracts,* § 900 (3d ed. 1963) (courts construe insurance contracts in favor of their purpose—coverage of the insured).

Thus, our analysis of the insurance contract at issue turns on whether the relevant provisions create an ambiguity or a reasonable expectation that coverage will be stacked. If they do, we interpret the contract against the insurer; if not, absent any countervailing legislative pronouncement evincing public policy regarding medical payments, we interpret the contract according to its plain meaning.

*Expectations of the insured.*

In *Lopez,* the sole apparent cause of ambiguity arose from the payment of separate premiums. Separate premiums give rise to expectations of greater coverage. *See Jimenez,* 107 N.M. 322, 324–25, 757 P.2d 792, 794–5; *see also Lopez,* 98 N.M. at 170, 646 P.2d at 1234. The reasonable expectations of the insured thus provide the criteria for examining an insurance contract on the basis both of the actual words used and of unresolved issues that the insurance company has an obligation to address.

Sanchez argues that expectations arise not only because of separate premiums paid, but also because of the nature of uninsured motorist coverage. As this court has previously discussed, a problem with uninsured motorist coverage is that a pedestrian, killed by an uninsured driver, could have collected on more than one vehicle or policy (separate premiums paid in both cases), but if that same person were in

an insured vehicle, he or she only could have recovered under that one policy or vehicle. *See Lopez,* 98 N.M. at 169, 646 P.2d at 1233. This would have lead to the insured's being better covered as a pedestrian or in an unowned vehicle.

Medical payments, like uninsured motorist coverage, follow the person, leading to the same incongruities, and the same frustration of the insured's expectations. If the insured paid premiums on two cars and is injured while *outside* of one car, he or she could recover under *both* policies, whereas if injured inside one car, the insured could recover only under that car's policy. Because most people would expect to carry their maximum amount of coverage while inside an insured car, the preclusion of medical payments recovery would, like with uninsured motorist coverage, frustrate the insured's legitimate expectations. The insurance company's failure to explicitly address those expectations became its failure to clarify ambiguity under *Lopez.* State Farm argues here, however, that two policy sections unambiguously precluded stacking, making any contrary intention of the insured unreasonable, and we agree.

*Exclusionary clause is unambiguous.*

The relevant portions of the policy, *supra,* clearly indicate that medical coverage is for the vehicle described in the policy only and, therefore, unambiguously rejects stacking. Faced with this clear and unambiguous language, any contrary reading by Sanchez clearly was not reasonable, and he could not have reasonably understood the policy to provide for stacking under these circumstances.

The policies state that State Farm will pay medical expenses to certain enumerated parties while they operate a vehicle covered under the liability section. The liability section obligates the insurer to pay for loss resulting from the use of "your car," which is defined as the one car owned by Sanchez that the policy covers. The policy further excludes injury sustained while occupying any vehicle owned by Sanchez that is not insured by the coverage of the policy.

We find that this language clearly and unambiguously excludes stacking of medical coverage. The four other policies on vehicles owned by appellant's father specifically exclude medical coverage for injury incurred through the use of any vehicle owned by Sanchez but not listed on the policy. *Compare Lopez,* 98 N.M. at 168, 646 P.2d at 1232 (rejecting insurer's contention of unambiguity because the policy did not consider multiple premiums).

Sanchez contends, nevertheless, that the exclusionary clause is subject to an alternative interpretation. He maintains that the term "coverage" in the clause, "[t]here is no coverage: ... [f]or medical expenses for bodily injury (a) sustained while occupying ... a vehicle ... which is not insured under *this coverage* " (emphasis added) can be interpreted not to refer to the single policy, but to all policies purchased from State Farm. Thus, the exclusion refers to vehicles owned by Sanchez but insured by an alternative carrier; the clause can be read as an attempt by State Farm to capture all of the family's insurance business. Sanchez cites *Schmick* as authority that "coverage" is susceptible to plural as well as singular meaning. *See* 103 N.M. at 219, 704 P.2d at 1095.

We reject this attempt to demonstrate an ambiguity. To hold otherwise would require an unreasonable construction that would import different meanings to the two uses of the term "coverage" in the same sentence.

Thus, we hold that the insurance policy unambiguously reflects the agreement of the parties to exclude stacking of medical coverage. Because we are not faced with any countervailing legislative policy mandating a different interpretation, we abide by the canons of contract construction and find that the unambiguous terms should be enforced.

State Farm is entitled to preclude stacking. We hold the medical payments from the Sanchez' five policies may not be stacked. Accordingly, we affirm this portion of the trial court's rulings.

We remand to the district court for further proceedings in accord with the first part of this opinion.

IT IS SO ORDERED.

SOSA, C.J., and RANSOM, J., concur.